# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, | : <br> : |
| Plaintiff, | : |
| | : CIVIL ACTION No. 2:12-cv-01506-PBT |
| v. | : |
| | : |
| F&M EQUIPMENT LTD., f/k/a FURNIVAL MACHINERY COMPANY, | : <br> : |
| | : |
| Defendant. | |

## MEMORANDUM

**Tucker, C. J.**                                                                             **August 15, 2013**

      Indian Harbor Insurance Company filed a Complaint seeking a declaratory judgment against F&M Equipment, Ltd. f/k/a Furnival Machinery Company in connection with a dispute surrounding the renewal of an insurance policy. Furnival filed a Counterclaim against Indian Harbor alleging breach of contract. Presently before the Court is Furnival's renewed motion for summary judgment on its breach of contract claim and Indian Harbor's claim for declaratory judgment, as well as all responses and reply briefs thereto. The motion is limited to the meaning of the term "renewal" as used in a particular endorsement of the insurance policy. Based on the following reasons, the Court will deny Furnival's motion for summary judgment.

## I.  Factual and Procedural Background

      The facts of this case surround an insurance contract dispute between the two parties. Indian Harbor Insurance Company ("Indian Harbor" or "IHIC") provides insurance coverage to commercial businesses. F&M Equipment, Ltd. f/k/a Furnival Machinery Company ("Furnival")

1

is a corporation that is primarily engaged in the distribution of construction machinery and equipment.

Indian Harbor contractually agreed to insure Furnival from December 13, 2001 through December 31, 2011 under a "Pollution and Remediation Legal Liability Policy" ("Policy"). The Policy is a seventy-four paged document which details the terms and conditions of the insurance coverage offered by Indian Harbor. The specific terms and conditions relevant to this case include: (1) the Policy provided $10 million in protection; (2) the Policy provided insurance coverage for twelve Furnival locations across the United States; and (3) the Policy was set to expire ten years from the purchase date.

Additionally, the Policy includes separate sections labeled "Endorsements," which detail unique terms agreed upon by the parties. Endorsement No. 16 modifies the standard cancellation policy, outlining the circumstances that would warrant cancellation or non-renewal of the Policy. Endorsement No. 16 reads:

> **CANCELLATION AND NON-RENEWAL MODIFICATION**
>
> This endorsement modifies insurance provided under the following:
>
> POLLUTION AND REMEDIATION LEGAL LIABILITY
>
> Section IV. CONDITIONS, Item B. **CANCELLATION** is amended by the addition of the following:
>
> I. The INSURED and the Company agree that the Company may cancel at any time or refuse to offer a renewal extension of coverage for the following reasons:
>
>    a. the INSURED has made a material misrepresentation which affects the Company's assessment of the risk of insuring the location(s) listed in the Pollution Legal Liability Schedule and/or Remediation Legal Liability Schedule.
>
>    b. the INSURED materially breaches any of its obligations under the Policy, fails to pay the premium or fails to pay any Deductible or Retention Amount; or
>
>    c. material failure on the part of the INSURED to comply with Policy terms, conditions, or contractual duties; or

        d.   a material change in the operations or lack of operations performed by the INSURED, which changes the Company's assessment of the risk of insuring the location(s) listed in the Pollution Legal Liability Schedule and/or Remediation Legal Liability Schedule.

    II.   Furthermore, the INSURED and the Company agree that the Company may refuse to offer a renewal extension of coverage to the INSURED for the following reason:

        I.   loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of non-renewal, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of non-renewal will be mailed at least sixty (60) days before the effective date of non-renewal. This does not apply to Section V. EXTENDED REPORTING PERIOD, Item A., Automatic Extended Reporting Period or Section V. EXTENDED REPORTING PERIOD, Item B., Optional Extended Reporting Period.

The Company agrees that it shall not cancel nor non-renew this Policy *except for* the reasons stated above.

*All other terms and conditions remain the same*.

Exh. A., Endorsement No. 16. (emphasis added).

In 2001, Furnival paid Indian Harbor $520,498 for the Policy and the accompanying Endorsements. On June 30, 2006, about 5 years after the Policy began, both parties agreed to implement Endorsement No. 23. (Indian Harbor's Ex. A.) The terms expressed in Endorsement No. 23 amended the Policy's terms and conditions by increasing the Policy's limit from $10 million to $14 million. (Id.) Additionally, Endorsement No. 23 increased the Policy premium by an additional $55,798. (Id.)

As the Policy approached its termination, on September 12, 2011, Indian Harbor requested a renewal application from Furnival. On or about December 28, 2011, Furnival sent Indian Harbor a request for the renewal offer, per the terms specified in Endorsement No. 16. On January 24, 2012, Indian Harbor sent Furnival's insurance broker its version of a renewal offer, which Indian Harbor referred to as an "Indication." The terms and conditions illustrated in the Indication were different from those expressed in the original Policy. Namely, the Indication provided coverage for Furnival for a one-year term and $5 million limits. Furthermore, the

Indication omitted coverage for one of the twelve locations previously insured for Furnival under the original Policy.

Indian Harbor specified that Furnival had six days to accept the offer before its expiration on January 30, 2012. Unsatisfied with the terms of the Indication, Furnival declined to accept on January 27, 2012. A month later, Furnival immediately requested a renewal with "[p]roposed premiums payable and all other relevant terms and conditions for a renewal policy that the named insured is entitled to and allowed to elect under the policy." (Indian Harbor's Resp. Br., at p. 4.) As a result, Furnival sent Indian Harbor a notice accepting "the renewal extension that Indian Harbor was obligated to offer under Endorsement No. 16," along with a check for $520,498 to serve as the premium for the renewed Policy.[1] (Furnival's Br., at p. 8.) Indian Harbor returned the check and rejected Furnival's request on March 14, 2012. (March 14, 2012 letter, Furnival's Ex. F.)

Following this exchange, Indian Harbor filed a Complaint against Furnival on March 23, 2012 seeking declaratory judgment from the Court on four issues: "(1) IHIC made an offer to renew the Policy as required by Endorsement No. 16; (2) Furnival rejected IHIC's offer to renew the Policy, resulting in its termination on December 31, 2011; (3) IHIC had no obligation to offer to renew the Policy under the same terms and conditions as the expiring Policy; and (4) Furnival's attempt to renew the Policy under the same terms and conditions as the expiring Policy is without force and effect." (Compl. ¶ 6-7.)

Furnival filed its Answer, Affirmative Defenses, and Counterclaim to the Complaint on May 29, 2012. In its Counterclaim, Furnival raised claims under Bad Faith Breach of Contract

---

[1] This amount reflected the premium specified in the original Policy, not the premium later raised through Endorsement No. 23.

(Count I) and Pennsylvania's Bad Faith Law, 75 Pa. C.S. § 8371 ("Section 8371") (Count II). By Order dated March 19, 2013, this Court granted Indian Harbor's Rule 12(b)(6) motion with respect to Count II of Furnival's complaint.

Furnival now files the present motion for summary judgment on its breach of contract claim and Indian Harbor's claim for declaratory judgment, requesting that the Court award specific performance for Indian Harbor's failure to provide a "renewal extension" of the expired insurance policy. The present motion is limited to the issue of whether Indian Harbor was contractually obligated to provide Furnival with a renewal policy that included the same material terms as the expiring policy.

**II.        Standard of Review**

This Court can only find that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); accord Tran v. Metro. Life Ins. Co., 408 F.3d 130, 135 (3d Cir. 2005); UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004); Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A "material" fact is one that might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Accordingly, the moving party cannot withstand summary judgment if there is "genuine" dispute about a material fact. Id. ("[T]hat is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

In deciding a motion for summary judgment, the court must view all evidence in a light most favorable to the nonmoving party. See Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. Discussion

The resolution of this dispute rests upon the meaning of the term "renewal" as used in Endorsement No. 16 of the Policy. Ordinarily, the construction of an insurance policy is a question of law to be determined by the Court. Regents of Mercersburg College v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006). For purposes of this motion, the parties do not argue that the term "renewal" is ambiguous. Accordingly, the insurance policy will be construed and enforced according to the plain meaning of its terms. Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 163 (3d Cir. 2011).

Furnival asserts that the term "renewal" carries an implied promise to continue a policy on the "same material terms and conditions as the prior policy." (Furnival's Br., at p. 1.) Accordingly, Furnival argues that a policy with different terms and conditions is not a "renewal" at all, but a completely new policy with terms and conditions yet to be agreed upon by the respective parties. To support its position, Furnival points to an Eighth Circuit case where the court explicitly followed the "well-reasoned" rule that "renewal" "of an insurance policy means continuation of coverage on the same, or nearly the same, terms as the policy being renewed." McCuen v. Am. Cas. Co. of Reading, PA, 946 F.2d 1401, 1404 (8th Cir. 1991) ("Logically, anything else is not a renewal of the old policy, but an offer of an entirely new policy.") Id. Furnival also cites to a case where the Pennsylvania Superior Court noted, to "renew" a contract "means to begin again or continue in force the old contract." Flanagan v. Fid. Bank, 652 A.2d 930, 932 (Pa. Super. Ct. 1995) (quoting BLACK'S LAW DICTIONARY, 5th ed.)

Conversely, Indian Harbor maintains that a policy "renewal" can include different terms and conditions than the expiring policy "when the insurer brings those differences to the attention of the insured prior to renewal." (Indian Harbor's Resp. Br., at p. 7.) Indian Harbor

cites several legal commentators who echo its position on the matter. See Couch on Ins. § 29:42 (The "terms of the old policy are effective *unless* contrary intent is clearly demonstrated or the insurer makes the insured aware of the changes in the new policy") (emphasis added); C.J.S. Ins. § 558 ("an insurance company is bound by the greater coverage in an earlier policy where the renewal policy is issued *without calling to the insured's attention a reduction in the policy* to the insured) (emphasis added). Finally, Indian Harbor submits an argument based on practicality. That is, Indian Harbor dismisses Furnival's assertions that renewals must be made with the "same terms and conditions," because it would "impose a perpetual, never-ending obligation upon [Indian Harbor] to cover Furnival on the same terms and conditions, without any increase in premiums regardless of what future claims may be covered." (Indian Harbor's Resp. Br., at p. 16.)

Even with seemingly differing notions of what the term "renewal" means in this instance, ultimately, both Indian Harbor and Furnival agree on one significant point: "a renewal of a policy is, *unless otherwise expressed*, on the same terms and conditions as were contained in the original policy." See Furnival's Br., at p. 14-15, citing S. Farm Bureau Cas. Ins. Co. v. United States, 395 F.2D.176, 181 (8th Cir. 1968); Indian Harbor's Resp. Br., at p.11, citing Shock v. Penn Twp. Mut. Fire Ins. Ass'n of Lancaster Cnty., 24 A.2d 741 (Pa. Superior Ct. 1942).[2]

---

[2] Courts generally agree that a renewal policy is presumed to adopt and have reference to the terms of the existing or expiring policy, unless otherwise expressed. See e.g., Elson v. State Farm Fire and Casualty Co., 691 N.E.2d 807, 812 (Ill. App. Ct. 1998) (renewal of insurance "unless otherwise expressed, is on the same terms and conditions as were contained in the original policy"); Wynn v. Avemco Ins. Co., 963 P.2d 572, 574 (Okla. 1998) ("it is presumed, unless a contrary intention appears, that the parties intended that the renewal policy cover the same terms, conditions, and exceptions as the original") (citations omitted); Patel v. Northfield Ins. Co., 940 F. Supp. 995, 1000 (N.D. Tex. 1996) ("In the absence of an agreement to the contrary, the presumption is that renewals are on the same terms, conditions, and amounts as provided in the original policy"); Resolution Trust Corp. v. The American Casualty Company of Reading, PA, 874 F. Supp. 961, 967 (E.D. Mo. 1995) ("a renewal is also considered a contract with the same terms and conditions as those contained in the policy which is renewed"); Countryside Oil Co. v. Travelers Ins. Co., 928 F. Supp. 474, 481 (D.N.J. 1995) ("unless expressly notified of the change in coverage, an insured is permitted to assume that a renewal policy affords the same coverage as the previous policy"); Lexington

Hence, while Furnival may have inadvertently acknowledged this "unless otherwise expressed" exception to the general rule of "same terms and conditions as contained in the original policy," the Court has taken note of it. Accordingly, the term "renewal" will be enforced in accordance with this construction. That is, unless otherwise expressed by Indian Harbor, the renewal policy shall be construed to be subject to the terms and conditions contained in the original policy.

Based upon the undisputed facts, it is clear that Indian Harbor sufficiently called attention to the change in coverage when providing Furnival with the Indication of proposed terms for the renewal policy. Upon review of those proposed terms, Furnival was free to accept or reject the offer. Here, Furnival rejected the proposed terms and, in turn, Indian Harbor extended the offer to negotiate. While negotiations have yet to take place, Furnival's firm demand for the same coverage as that provided under the originating policy was unreasonable. Certainly, an agreement to renew a policy is one thing, and the actual policy renewed is another and different thing. Accordingly, the Court will deny Furnival's summary judgment motion and find in favor of Indian Harbor.

## IV. Conclusion

Based on foregoing reasons, Furnival's motion for summary judgment on its breach of contract claim is denied. An appropriate order will follow.

---

Ins. Co. v. American Healthcare Providers, 621 N.E.2d 332, 340 (Ind. Ct. App. 1993) ("insureds can presume that the renewal of an insurance policy will be on the same terms as previously agreed unless they are specifically notified otherwise"); Schock v. Penn Township Mutual Fire Ins. Ass'n of Manchester County, 24 A.2d 741, 743 (Pa. Super. Ct. 1942) ("the delivery of the policy as a renewal, in the absence of notice or explanation that the terms of the policy had been altered, contemplated the same terms and conditions as the existing insurance"); L. Lewitt & Co., Inc. v. Jewelers' Safety Fund Soc., 164 N.E. 29, 31 (N.Y. Ct. App. 1928) ("An agreement to renew a policy implies that the terms of the existing policy are to be continued . . . in the absence of evidence, that a change was intended") (citations omitted).